Good morning, everyone. It's nice to see the lawyers back in the courtroom. Our first case up this morning is Instituto Mexicano v. Zimmer Biomet Holdings. Good morning. Good morning. May it please the court. My name is Mark Manny, and I have the pleasure of representing the Instituto Mexicano del Seguro Social, which, fortunately, all Mexicans refer to as IMS. IMS sued Zimmer Biomet for corruption, for paying kickbacks and bribes to Mexican government officials to sell more of their goods, including goods that had not been registered with the proper authorities in Mexico, which products were then put inside Mexican citizens. The lower court dismissed that lawsuit on the basis of forum nonconvenience. Importantly, the lower court did that without any evidence being presented of a burden, harassment, or oppression on Zimmer Biomet from trying the lawsuit in their court, and no evidence of any burden on the court itself. The court's decision was based entirely on its view of the pleading and the nature of IMS corruption claims, which leads me to begin where IMS agrees with the lower court and agrees with Zimmer Biomet. Mr. Manny, before we go into the merits, I just want to clarify one jurisdictional issue with you. We had given direction to file amended jurisdictional statements, and your last amended jurisdictional statement did not identify Zimmer Biomet's principal place of business or state of incorporation. I assume that you're not disputing their filing as to their principal place of business. No, their principal place of business is Warsaw, Indiana. Okay. That wasn't included in yours, and I wanted to make sure there wasn't some reason you weren't… Well, I apologize, but yes. Okay. Yes. The jurisdictional basis is that I represent a foreign sovereign against a U.S. citizen, Zimmer Biomet. Where we agree is on page 22 of Zimmer Biomet's brief. They have a heading that says, Mexico holds an overwhelming interest in this litigation. That is a true statement. It follows directly from what the lower court said, that it could not envision a case in which Mexico would have a greater interest than this case, the rooting out of corruption from its governmental offices. Where we differ is that IMSS and Mexico itself believes that that overwhelming interest should call for the retention of this case and retention of jurisdiction, not for its dismissal. Because Mexico, through its governmental agent IMSS, chose to file the suit here. They did not choose to file it in Mexico. They chose, pursuant to the U.N. Convention, to file a lawsuit here in Zimmer Biomet's own home and brought suit here. Yet the lower court's opinion never addresses the issue that Mexico's policy choice was a lawsuit to be filed in the United States and not Mexico. Instead, based again entirely on the pleadings, no evidence, determined for itself that Mexico's interest would be best served by dismissing Mexico's own lawsuit. But there was evidence that the court considered. The court considered the declaration of the former judge from Mexico, Judge Diaz. As to whether or not we could get jurisdiction over Zimmer Biomet based on their concession of jurisdiction. There was no evidence of burden. There was evidence, and it is true, that Zimmer Biomet has now consented to jurisdiction and we could get jurisdiction over. Which leads me to my second part. I want to discuss why IMSS sued here. First, they had to. Everyone concedes that before Zimmer Biomet consented to jurisdiction, they could not be sued in Mexico. And do you concede that under the forum nonconvenia analysis that their consent makes that jurisdiction available? Yes. They can be sued in Mexico based on their consent. We don't dispute that legal point. We do dispute that we can bring the claims against them because of the investment treaties from the United States and Mexico. Mexican courts have historically not addressed claims against parents for the actions of their subsidiaries and their agents. And that's the main reason that IMSS sued here and not in Mexico. And, for example, why we didn't accept their consent to jurisdiction, dismiss our lawsuit, and go to Mexico. And that's because experience has shown that corrupt companies hide behind their bag man. They hire a sales agent or distributor or set up an undercapitalized subsidiary. Give them too large of a commission or too big a share of the profits so that that entity can pay bribes and still retain some of the profits. They obscure their role. And it has come through experience to decide the only way to stop corruption is to stop the people who are sitting in the top-level corporate offices who manage this. That's what the United States does. The United States collected more than $200 million from Zimmer BioMed for their actions in giving kickbacks to United States doctors so they could sell more products to Medicare and Medicaid. They didn't go after the sales agents who paid the bribes. They didn't go after the doctors who got the bribes. They went after the decision-makers. The U.N. Convention Against Corruption is designed to allow that effective enforcement. Mr. – I'm glad you mentioned that. I'm not really sure – I don't really see that. I mean, I see what the convention does and what the treaty does, but it's non-self-executing, right? It is not because the United States said that their laws – we already have domestic laws that address all this stuff, so it's not self-executing. We don't need additional laws. So that would suggest to me that nothing in the treaty trumps the doctrine of foreign nonconvenience. At least that's the way I read it, and particularly under the Supreme Court's case. I think it's Medellin versus Texas that talks about the United States. The treaty gets ratified by the Senate. The Senate says it's not self-executing, and Congress basically says, we don't need any additional laws to address what's in the treaty. We already have them. And we don't need additional laws, but those cases do not say that a district judge, in applying their discretion, should not look to the treaties, which are legal obligations of the United States, to assess the application of that discretion. And in this case, because the lower court, based on its own individual reading of the claims, decided what Mexico's interest was, did that without a hearing. You've argued in your paper several times that the court didn't consider the treaty, but the court did. It just didn't find it in its balance that it overcame the other factors in the foreign nonconvenience analysis. Well, but what the court said is it only applied to the initiation of the lawsuit. And then after that was irrelevant, because the court's reading of Article 35, which was not the correct article, in that clause does say parties have the right to initiate a lawsuit to obtain compensation. And you're missing in there, in accordance with principles of domestic law, which is exactly what the foreign nonconvenience analysis is. Your Honor, IMMS has never taken the position that this vitiates foreign nonconvenience. What we're saying is, is that based on the convention, the court should have respected Mexico's choice and paid deference to it, to at least the level of a U.S. citizen. And they did not do that. The court's opinion reads as if IMMS is a private Mexican company, and that its choice to sue here has no relevance to Mexico's policies. So the court printed an error of fact by holding that Mexico's policy interests are served by dismissing this lawsuit. Well, that is clearly not true. Have you waived your argument that they should be treated the same as a domestic party by not raising that issue below? We did raise that issue below. We said that because we had to sue here, the Xi case from the D.C. Circuit, and because of the convention and the respect it has, that we should be treated as a U.S. party. But your argument that the convention required the court to treat your client as a domestic party, I'm not sure you raised that below. It may not be in those exact terms, but we said that because of the convention and the right to bring suit here, that our choice had to be respected. Zimmer Biomet, the flip side of why IMMS wants to be here, is Zimmer Biomet wants to be in Mexico because then none of its officers in Warsaw, Indiana, will ever be called to testify. None of them will have to decide whether or not they have to plead the Fifth Amendment. None of the evidence that Zimmer Biomet did this in the United States and did this in China and Brazil will come to light. They can do what corrupt companies do. They will hide behind their magnet because that will be their success, which is the reason we want to be here is the reason they don't want to be here. Another issue that comes from the precedent the court has set, because by looking solely at the claims with no evidence of any burden or oppression, what the court has said is that any case brought pursuant to the convention is going to be dismissed because in all cases the victimized country will have an overwhelming interest in that lawsuit, which means for the lower court it will be dismissed. The pressure that puts on countries particularly as to challenge their own courts, because the only way to avoid that conclusion is if they said their country's own courts are corrupt, unavailable, inadequate. Mexico almost did let me make the argument. But there are countries out there that if you allow corrupt parties to be sent to the place that they corrupted with greater resources than the local countries, with a proven propensity to pay corruption, you will be sending cases back where corruption will be freed because of further corruption. And they'll never be able to challenge it because if they did, and any one of their citizens or themselves ever got a judgment in their own court, it would be unenforceable here because they would stand up in court and say their own country says our courts are corrupt. Mr. Manning, would you speak to witness availability and discovery issues? There will be the court focused on where sort of documents or witnesses are. I believe the issue is whether or not they're available in court. There is no doubt that there would be more documents available in court if the suit is tried here than in Mexico because there aren't discovery methods. There will be more witnesses here than in Mexico. All the IMS witnesses can be brought by IMS. All of their agents' witnesses can be brought by them. If the suit is tried in Mexico, we will not get any evidence from Warsaw, Indiana. And by the way, they collected all their documents in response to the Department of Justice and got a reduction in their fee, their fine, for having collected all the documents. So they're available here. So we will be much more hamstrung in Mexico than we would be here, even though physically, to the extent documents are physically present anywhere other than the cloud these days, they are in Mexico. Thank you. Thank you, Mr. Brown. Good morning, Your Honors. May it please the Court. My name is Troy Brown with Morgan Lewis. I have the privilege of representing Zimmer Biomet in this appeal today. And I'll begin a little differently than I was planning based on the panel's questions, which is to go right to the Convention. And in Appellant's answers to the questions asked by the panel, we looked at Article 53. And as pointed out, Article 53 of the Convention says, each state party shall, quote, in accordance with its domestic law, take such measures as may be necessary to permit another state party to initiate civil action in its courts. Under the abuse of discretion standard, that is exactly what the District Court did. It looked first at availability and adequacy and comprehensively analyzed that. It then looked at private and public interest factors and comprehensively analyzed that. It then looked at the UNCAC, the Convention issues, and it determined, as the question from the panel recited, whether or not the Convention suggests the foreign state party has an opportunity to initiate an action applicable and subject to domestic law. Foreign nonconvenience has been part of this domestic law for more than 200 years. How do you respond to Mr. Manning's argument that, given the foreign nonconvenience factors, that no foreign party would ever be able to sustain keeping a case in United States courts if the opposing side brings up foreign nonconvenience? I believe every District Court will have to weigh the complaint and the claims asserted against the facts that are pleaded and the various availability, adequacy, and public and private interest factor weighing that the District Court is entitled to do under deference for an abuse of discretion. In fact, this case has at its core the central nexus of all facts in our view, and as the District Court found not in a close call, as this court in past cases has found where close calls are at issue in deference to substantial abuse of discretion analysis, the District Court's holding stands. Here you have sales made by a Mexican subsidiary of Zimmer Biomet, Biomet 3i Mexico, under an alleged Mexican contract with tag-along Mexican fraud claims with a Mexican statutory claim to a Mexican governmental agency for medical devices to be used in Mexico by unnamed Mexican bag men and agents who allegedly perpetuated bribery in connection with not a public corruption case being brought by INSS, but a private action. To the extent that a set of facts is presented to a Federal District Court in connection with a foreign state party invoking its rights to initiate an action under Article 53 in a Federal District Court anywhere, whether it is in the home court of the defendant or elsewhere. If the factual nexus of the claims bridge the gap between the foreign jurisdiction and the state jurisdiction in which the action is brought, perhaps the District Court will evaluate those facts and determine that the private and public interest factors after getting through availability and adequacy do, in fact, allow for a weighing under the standard of abuse of discretion that might favor once the District Court gets to the public interest factors keeping the case in the jurisdiction in which the foreign state party. It's no different, Your Honors, I would suggest, than any domestic plaintiff who might bring an action from his, her, or its home state in the defendant's home state and go through the same domestic law forum nonconvenience assessment that a foreign state actor. What's typically not at issue, and that this Court has confronted in many cases dismissing and affirming on forum nonconvenience when Hungarian law and Hungarian facts are involved, when Bulgarian law and Bulgarian facts are involved, when Saudi Arabian facts and Saudi Arabian laws are involved, and even in the In Re 8 and 9 blood factor products litigation when UK law and UK facts are involved. This Court has repeatedly affirmed forum nonconvenience dismissals despite the fact that the foreign plaintiffs were suing in a U.S. court and these same issues arose. The only difference here is we have a foreign state actor taking advantage of Article 53's right, which they have, to initiate the action. Mr. Brown, can I ask one question here? Yes, Your Honor. Did the District Court confuse IMS, I guess IMS as in IMS's interest with Mexico's interest? Mr. Emani makes an argument that they're one and the same and that the District Court analyzed them as if they were different or somehow different. Do you agree with that characterization? Not necessarily. And if the District Court did that, does it make any difference to our analysis? Yes. To the second question, I would say it does not. To the first question, I did not read the District Court's analysis to be confused about the interrelationship from the face of the pleadings regarding IMSS and the Mexican government at large. IMSS is a decentralized agency of the Mexican government that has certain interests, according to the pleading, in connection with pursuing rights under an alleged contract that no one has seen between either Zimmer Biomet or Biomet 3i Mexico. Again, not attached. We don't know. But what the court was looking at was this isn't the Mexico government bringing a specific corruption action. This is a decentralized agency plaintiff bringing a private contract action. Its allegation is that there was a breach of contract by the contracting party, the Zimmer Biomet subsidiary in Mexico, presumably Biomet 3i Mexico, and the contract allegations and the tag-along fraud allegations and the Mexico statutory law of acquisition allegations all suggest that the sales made under this alleged contractual relationship were sales tainted by alleged bribery. And with respect to that taint, IMSS, this decentralized agency as plaintiff, is seeking to recoup monies it paid for the medical devices purchased and used with patients in Mexico for hip implants or knee implants. I don't believe, and I haven't seen anything, Your Honor, in the district court's analysis that suggests that he was confused in any way in assessing Mexico versus IMSS. What I do believe the district court did is when he got to the fourth issue that he had to confront after availability, which seemed uncontested, and I heard my colleagues say it is essentially uncontested because what Zimmer Biomet did here actually facilitates the convention. It's partly what the convention is intended to do, at least when I would suggest a form of nonconvenience issue is raised, which is to avoid the foreign state actor who takes the rights to initiate under Article 53 and then faces an attack in U.S. courts whereby if our domestic law was to dismiss on form of nonconvenience, the foreign state actor is left with potentially no ability to pursue those claims in its home foreign jurisdiction. Here, the convention is facilitated because Zimmer not only consented to jurisdiction, but as Your Honor saw, it consented to three things. It consented to accept service of process. It consented to jurisdiction in the Mexican courts. And it confirmed through its declaration and consented that to the extent a Mexican federal court, because this is a federal court matter in Mexico under Mexican civil law, to the extent that there is a judgment ultimately rendered against this entity by a Mexican court, that Zimmer will give deference and honor that judgment. That's even more assurances to IMSS than what the convention presumably was designed to encourage and allow, which is to let a foreign state party sue and initiate subject to domestic law. Mr. Brown, do you believe the district judge in assessing the evidence gave sufficient thought to the alleged U.S. contacts with the bribery scheme? I do, Your Honor. The judge did a very comprehensive analysis, and he looked at where is the predominance of the likely evidence first, and second, under the private interest factors, what are the burdens associated with these issues in Mexico courts versus U.S. courts. With respect to giving analysis under the abuse of discretion standard for purposes of evidence and availability, he looked at the fact that the predominant number of witnesses, and some of this conduct dates back 12 years, the predominant witnesses are in Mexico. Certainly all of IMSS's witnesses are in Mexico. Certainly the alleged Mexican unnamed bag men are either in Mexico or somewhere else. We have no idea. To the extent that there are documents at IMSS in Mexico or testimony from Mexican witnesses, they would be predominantly in Spanish and require the burdens of both the district court in Indiana and eventually an Indiana jury, who the district court found on page 12 of the opinion, Indiana has really little touching to this, would have to engage in the heavy burden of reviewing translated documents and then hearing translated testimony of witnesses. To the extent that Zimmer Biomet could even get witnesses to defend itself in U.S. court because Zimmer Biomet, unlike IMSS in Mexico, has a much heavier hurdle to overcome under statutory law in Rule 45 to try to compel, which it cannot do through U.S. domestic law, process and get Mexican witnesses to the U.S. to testify. The inverse is actually not true. In the inverse, in Mexico, Mexican courts are fully authorized, particularly the Mexican federal courts, to compel all of the Mexican nationals and all of the Mexican citizens to provide testimony. And as this court has repeatedly found and as we cited in the briefs and as other circuits have found, the availability or limitations on the availability of discovery in foreign jurisdictions versus the domestic U.S. jurisdiction is not a determinative factor on the Foreign Nonconvenience Analysis because it comes up repeatedly. The question on availability and adequacy, and it typically arises both in the adequacy context and then later in the weighing of the private factors. On adequacy, adequacy does not equate to likelihood of success, as this court has found. Adequacy means the ability to pursue your case through to a potential remedy. And that is what IMSS gets in Mexico. That is what the district court comprehensively assessed. And did it in, Your Honor, a very methodical way. Did the court sufficiently consider all the documents that were gathered for the DOJ investigation? Did you say did the court consider? Did the court sufficiently consider that? Yes, I believe the court did. I mean, the court makes reference to the fact that there will be documents collected in connection with the deferred prosecution agreement. I think there had been already, not that there would be, but they had already gathered these. That there would be some corpus of documents that had been collected in connection with that matter, and the court assessed that. Now what the court said and what we argued in our briefing in the motion to dismiss in the underlying action is it is unclear whether or not those documents or issues, and the court makes reference to this in the opinion, whether the documents collected in connection with the government's investigation of some of this broader than Mexico alleged bribery issues stemming back more than a decade prior to the Zimmer Biomet merger, whether or not those documents will have any or potentially any relevance to a private contract action between a Mexican decentralized agency and Zimmer Biomet Holdings, the parent company of the Mexican subsidiary Biomet 3i Mexico. So I believe the court did address it. It didn't address it in many pages, but it did reference it. The court addressed it, and again, I would suggest that under the abuse of discretion standard, even if one or two, and I submit that there's no basis to find that the court made an error on any of its analysis, but even if this panel were to find that there was some sort of an error made with respect to one or two of the issues that the district court assessed on the weighing of the private and public interest factors, none of those errors would be more than harmless because certainly none tip the scales under an abuse of discretion standard from the eight of nine factors that the district court found strongly weigh in favor of granting the motion to dismiss on the basis of forum non-convenience. I'll finish with reading from the opposition to the motion to dismiss filed by IMSS, which I think, Your Honors, before the appellate briefing in this case, essentially agreed that the district court has full discretion here, and at A409, page 10 of the opposition, IMSS told the district court that which we agree. Therefore, this court should apply, quote, the same forum non-convenience standards that it would have applied to a U.S. citizen, citing the Erlinges case in the Second Circuit, which is exactly what the district court did. It went on, and IMSS told the district court, citing the Blanco v. Banco industrial Venezuela case, that when a treaty with a foreign nation accords its nationals access to our court's equivalent that provided American citizens, identical forum non-convenience standards must be applied to such nationals by American courts. That was the standard before the judge. That's what IMSS argued. That's what Zimmer Byam had argued. Thank you, Your Honors. Thank you, Mr. Brown. Mr. Mandy, rebuttal. You have about three minutes left. Thank you. A couple clarifications. First, IMSS is directly a part of the Mexican government. Its director general is appointed by the president. All of its top officials are appointed in the exact same way as the officials of the military. The foreign relations are appointed. It is part of the Mexican government. It provides the same services our Social Security Agency plus provision of medical care. Second, it does not change U.S. domestic law  the policy determinations of the U.N. Convention. The U.N. Convention is a statement of U.S. federal policy that we are to allow foreign governments to come to our courts to bring corruption claims. The District Court did not make an error in not adopting and recognizing that statement of U.S. policy. The Convention also states that foreign states have the right to set their policy. IMSS, as an agency of the Mexican government, stated that they were bringing this lawsuit on their purpose. The District Court erred fundamentally when it held on its own that Mexicans' policy interests were the exact opposite of its stated policy interests. That they had an overwhelming interest to have their lawsuit dismissed when Mexico didn't say that. Mexico said the exact opposite. Those are errors of fact. Whether or not the Convention applies directly or not, the Convention is a statement of U.S. policy and a statement of Mexican policy. It's also untrue that Article 53 only allows initiation of a lawsuit in accordance with our laws ending to obtain compensation. Unlike Article 35, there's a second paragraph of that article, which I will read. It requires U.S. to take such measures as may be necessary to permit its courts to order those who have committed offenses under the Convention to pay compensation or damages to a state party that has been harmed by such offenses. Nothing about initiation. It is a statement of U.S. policy that M's and entities like it can bring compensation here. I also want to point out a gross contradiction in Zimmerbeinemann's argument. On the one hand, they say this case needs to go to Mexico because all the evidence is in Mexico. In the next breath, they say the fact that you can't actually use any of that evidence in Mexico because of differing discovery is irrelevant because that goes to availability. If we're looking towards where the parties will have access to the relevant information, that is here. Its physical location is a legal irrelevancy. It is a practical irrelevancy. If this case is tried in Mexico, it will be virtually impossible other than their confession to hold Zimmerbeinemann liable as opposed to their bagman. Companies like Zimmerbeinemann are happy to let their bagman go to jail and lose their money as long as it doesn't affect them. Thank you. The case will be taken under advisement.